## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| MONIQUE BRINK, on behalf of herself and all others similarly situated, | Lead Case No. 1:24-CV-00501 |
| Plaintiff, | |
| v. | Consolidated Cases:    1:24-CV-006283 |
| | 1:24-CV000819 |
| SYSINFORMATION HEALTHCARE SERVICES, LLC d/b/a EQUALIZERCM and 1ST CREDENTIALING SERVICES, | Judge James R. Nowlin |
| Defendant. | |

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, Monique Brink, Faye McMillen, and Grant Johnson, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class,[1] preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims process.

## I.    INTRODUCTION

In April 2024, Defendants, SysInformation Healthcare Services, LLC d/b/a EqulizeRCM and 1st Credentialing, announced a data breach potentially affecting the Private Information of Plaintiffs and Settlement Class members. The Data Incident impacted approximately 514,324 individuals. This class action alleges Defendants failed to safeguard Private Information. Defendants deny all liability.

After extensive negotiations with the assistance of an independent third-party mediator, the Parties reached an agreement that is fair, adequate, and reasonable. The Settlement includes an all cash $2,800,000 Settlement Fund that shall be used to pay the following: (1) All Settlement Class Member

---

[1] All Capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement ("Agr."), attached hereto as ***Exhibit A***.

Benefits consisting of: (a) a cash payment of up to $5,000.00 per Settlement Class Member upon presentment of documented losses; or (b) an estimated $100 flat cash payment per Settlement Class Member; and (c) three years of three-bureau Credit Monitoring; (2) all Settlement Administration Costs; and (3) any Court-approved attorneys' fees, costs, and Service Awards.

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs move the Court to (1) preliminarily approve the Settlement terms as fair, adequate and reasonable; (2) provisionally certify the Settlement Class; (3) appoint Jeff Ostrow, Gary Klinger, Andrew Shamis, and Bruce Steckler as Class Counsel; (4) appoint Plaintiffs as Class Representatives; (5) appoint Epiq as the Settlement Administrator; (6) approve the Notice Program and the form and content of the Notices; (7) approve the Claim Form and Claim process; (8) approve the opt-out and objection procedures; (9) stay the Action and Related Actions pending Final Approval; and (10) schedule a Final Approval Hearing.

## II.       CASE SUMMARY

### A.       The Data Incident

Defendants are a third-party healthcare solutions company that offers provider credentialing services to its healthcare clients, including, but not limited to, payor enrollment, multi-state contracting, delegated credentialing, sanction monitoring, project work for payor enrollment, and much more. Declaration of Jeff Ostrow, Gary M. Klinger, Andrew Shamis, and Bruce Steckler in Support of Plaintiffs' unopposed motion for Preliminary Approval of Class Action Settlement Joint Declaration of Class Counsel ("Joint Dec."), attached as ***Exhibit B***, at ¶ 4. In the ordinary course of operating their businesses, Defendants collect, maintain, and store Private Information pertaining to certain of its healthcare clients, including, but not limited to, name, government identification number, date of birth, Driver's license number, employer identification number, electronic signature, financial account information, health insurance information, medical history/treatment information, login information, mother's maiden name, passport information, Social Security number, and tax

identification number. *Id.* at ¶ 5.

In or about June 2023, Defendants discovered suspicious activity related to certain computer systems which resulted in a network outage. *Id.* at ¶ 6. The investigation determined there was unauthorized access and/or acquisition of certain files and folders within the Defendants' network between June 3, 2023, and June 18, 2023. *Id.* at ¶ 7. Following an extensive review, Defendants determined that information which may have been involved included data related to certain services they provides to their clients as well as current and former employees of the Defendants. *Id.* at ¶ 8. On April 17, 2024, the Defendants began notifying by letter individuals who may have had their Private Information impacted in the Data Incident. *Id.* at ¶ 9.

Plaintiffs and the Settlement Class allege they relied on Defendants to keep their Private Information confidential and securely maintained, use this information for business purposes only, and make only authorized disclosures. *Id.* at ¶ 10. Through the Data Incident, cybercriminals allegedly were able to gain access to and exfiltrate the Private Information. Plaintiffs allege the Data Incident put them, and other Settlement Class members, at risk of imminent, immediate, and continuing risk of harm from fraud and identity theft. *Id.* at ¶ 12.

## B.    Procedural History

Commencing on May 13, 2024, following an investigation by Class Counsel, Defendants were named in the first of three putative Related Actions with overlapping claims, seeking to represent the same putative class. *Id.* ¶ 13. Plaintiffs in the Related Actions conferred, agreed to, and moved the Court on August 23, 2024, to consolidate the Related Actions and to appoint Class Counsel as Interim Co-Lead Class Counsel. On September 3, 2024, the Court consolidated the cases into this Action and appointed Jeff Ostrow, Gary Klinger, and Andrew Shamis as Interim Co-Lead Class Counsel for the putative class. On October 18, 2024, Plaintiffs filed their Consolidated Complaint. *Id.*

Soon after filing, the Parties began discussing the prospect for early resolution after an

exchange of information necessary to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Joint Dec. at ¶ 14. To further facilitate settlement negotiations, the Parties agreed to mediate Plaintiffs' claims with John DeGroote, a widely respected mediator with experience mediating data breach class action litigations. *Id.* ¶ 15. Before mediation, Defendants provided informal discovery related to the merits of Plaintiffs' claims, class certification, and Defendants' defenses, and the Parties discussed their respective positions on those issues. *Id.* ¶ 16. The Parties also fully briefed their respective positions for the mediator. *Id.* This informal exchange of information, combined with Plaintiffs' individual research, and the relevant experience of Class Counsel, allowed counsel to fully evaluate the strengths and weaknesses of Plaintiffs' case, and to conduct informed settlement negotiations. *Id.* ¶ 17.

On October 24, 2024, the Parties attended a full-day mediation. *Id.* ¶ 18. After a full day of mediating, the Parties reached an Agreement in principle setting forth the essential terms of the Settlement. *Id.* ¶ 19. Over the next months, the Parties diligently drafted, negotiated, and finalized the Settlement, Notices forms, and agreed upon a Settlement Administrator. *Id.* ¶ 20.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Benefits

The Settlement provides for an all cash $2,800,000 Settlement Fund to pay for all Settlement Class Member Benefits, attorneys' fees and costs, Service Awards, and Settlement Administration Costs. The Agreement provides for relief for the following Settlement Class:

> All persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendants that their Private Information was potentially accessible as a result of the Data Incident.

Agr. ¶ 59. It excludes (a) all persons who are governing board members of the Defendants; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff. *Id.*

Settlement Class Members may Claim the following from the Settlement Fund:

### 1. *Cash Payment A – Documented Losses*

Settlement Class Members may each submit a Cash Payment A Claim for up to $5,000.00 upon presentment of documented losses related to the Data Incident. *Id.* ¶ 69(a). For this benefit, the Claim Form must attest under penalty of perjury to incurring documenting losses. *Id.* Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendants or otherwise. *Id.*

### 2. *Cash Payment B – Flat Cash Payment*

As an alternative to Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, which is an estimated $100.00 flat cash payment. *Id.* ¶ 69(b).

### 3. *Pro Rata Adjustments to Cash Payments*

Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. *Id.* ¶ 70. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. *Id.* For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payment A, and finally for Cash Payment B. *Id.*

### 4. *Credit Monitoring*

In addition to electing a Cash Payment, Settlement Class Members may elect up to three years of Credit Monitoring that will provide three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. *Id.* ¶ 69(c).

### 5. *Business Practice Changes*

Plaintiffs have received assurances Defendants have undertaken reasonable steps to further secure their systems and environments. *Id.* ¶ 71. Defendants have provided confidential discovery regarding the facts and circumstances of the Data Incident and Defendants' response thereto, and the changes and improvements made to protect class members' Private Information. *Id.* Defendants will provide a sworn declaration attesting to the amount of money spent on remediation efforts and security enhancements, which has a cost of at least $250,000.00. *Id.*

### B.    **The Notice Program and Claims Process**

The Parties have agreed to use Epiq Class Action Claims & Solutions, Inc as the Settlement Administrator in this case. *Id.* ¶¶ 57, 74.

### 1. *Notice*

The Notice Program calls for direct and individual Postcard Notice to be provided to the Settlement Class via U.S. Mail. *Id.* ¶ 79. Defendants shall prepare and provide the Class List to the Settlement Administrator using information in its records, which will include the Settlement Class's names and postal addresses. *Id.* ¶ 25. The Settlement Administrator will also establish a dedicated Settlement Website as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to the Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. *Id.* ¶ 63. The Settlement Administrator will also make a toll-free telephone for the Settlement Class to call with Settlement-related inquiries and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries. *Id.* ¶ 76(e).

### 2. *Claim Form Process and Disbursement of Cash Payments and Credit Monitoring*

The timing of the Claims process is structured to ensure all Settlement Class members have adequate time to review the Settlement terms, make a Claim, or decide whether they would like to opt-out or object. Joint Dec. ¶ 43. Settlement Class members will have until 15 days before the initially scheduled Final Approval Hearing to submit their Claim Form to the Settlement Administrator, either electronically or by mail, and the Claims process is structured for accurate review and approval or denial of Claims, with procedures to prevent fraud and abuse in the Claim process and to allow Claimants to cure deficiencies. Agr. ¶¶ 22, 87-96. The Claim Form, attached to the Agreement, is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.*, Ex. 3.

Cash Payments will be made electronically or by paper check. *Id.* ¶ 98. Emails will be sent to Settlement Class Members with Valid Claim who elect Credit Monitoring with information on how to enroll in that program. *Id.* ¶ 99.

### 3. *Requests to Opt-Out or Objections*

Any Settlement Class member who wishes to opt-out form from or object to the Settlement shall have until the last day of the Opt-Out Period (30 days prior to the initially scheduled Final Approval Hearing) to do so. *Id.* ¶¶ 45, 82. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶ 82. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim. *Id.*

Objections must be submitted to the Clerk of the Court, Class Counsel, Defendants' Counsel, and the Settlement Administrator no later than the last day of the Objection Period (30 days prior to the initially scheduled Final Approval Hearing). *Id.* ¶ 83. The objection requirements are detailed in the Agreement and in the Long Form Notice. *Id.* ¶¶ 83, 84, Ex. 2.

**C.      Service Awards, Attorneys' Fees and Costs**

Subject to Court approval, the Settlement calls for reasonable Service Awards not to exceed $3,000.00 for each Class Representative, in recognition of the time and effort they expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement. Agr. ¶ 102. Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund ($933,333.333), plus reimbursement of costs. Agr. ¶ 103.

This Settlement is not contingent on approval of the Application for Attorneys' Fees, Costs, and Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 104. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement. *Id.*; An Application for Attorneys' Fees, Costs, and Service Awards will be made with the Motion for Final Approval for this relief. Agr. ¶ 100.

**IV.      LEGAL AUTHORITY**

Fed. R. Civ. P. 23(e) requires court approval of any class settlement, following notice. The preliminary approval stage is a forum to initially evaluate the settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 175 (5th Cir. 1979). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). At this stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). The standard at

this stage are not as stringent as those applied to a motion for final approval. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314–15.

Plaintiffs here seek Preliminary Approval of the proposed Settlement, an initial evaluation of the proposed Settlement's fairness. *See Manual for Complex Litigation* § 30.44 (4th ed.). Judicial and public policy favors the resolution of disputes through settlement. *ODonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 422040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is a strong presumption in favor of finding settlement agreements fair, particularly when they have been reached by experienced counsel, with the assistance of a third-party neutral, after a meaningful exchange of information. *ODonnell*, 2019 WL 4224040, at *8 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012)). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007) (quoting *Garza v. Sporting Goods Props., Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the Class for purposes of

9

Settlement. Because the proposed Settlement falls within the range of possible approval, this Court should grant Preliminary Approval and direct Notice to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiff here seeks certification of the Settlement Class defined in the Agreement. Agr. ¶ 59. The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Manual for Complex Litigation (Fourth)* § 21.632.

Under Fed. R. Civ. P. 23(a), a class action may be maintained where (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *4 (W.D. Tex. Aug. 20, 2018). Additionally, under Fed. R. Civ. P. 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Because a court evaluating certification of a settlement class is considering that only in the context of settlement, the court's evaluation is somewhat different than in a non-settled case. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *Id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a

court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This Action is no different.

**Numerosity.** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A class of 20 individuals is "much too small to meet the numerosity requirement." *Boykin v. Georgia-Pac. Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983). A class of 100 to 150 members, however, "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Class clearly surpasses the threshold required to establish numerosity. As the proposed Settlement Class includes 514,324 individuals, judicial economy would be well-served by certification. Joint Dec. ¶ 31. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

**Commonality.** Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high. Commonality does not require every question be common to every class member, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation" even where the individuals are not identically situated. *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011)). It can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, No. 17-14581, 2020 WL 5258454, at *5 (E.D. La. Sept. 3, 2020) (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Here, commonality is met because Plaintiffs can demonstrate numerous common issues exist,

for example, whether Defendants failed to adequately safeguard the Private Information of Plaintiffs and the Settlement Class. Joint Dec. ¶ 32. Defendants' data security safeguards were common across the Settlement Class. *Id.* Other specific common issues include, but are not limited to, whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident; whether Defendants' data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and whether Defendants' conduct was negligent. *Id.* These common questions, and others alleged in the Consolidated Complaint, are central to claims brought here, will generate common answers, and can be addressed on a class-wide basis. *Id.*

   ***Typicality.*** Under Fed. R. Civ. P. 23(a)(3), typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here, Plaintiffs' and Settlement Class members' claims all stem from the same event—the Data Incident—and the cybersecurity protocols Defendants had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' Private Information. Joint Dec. ¶ 33. Thus, Plaintiffs' claims are typical of the Settlement Class members' and typicality is satisfied.

   ***Adequacy of Representation.*** Representative plaintiffs must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

   Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief

for injuries arising out of the same Data Incident. Joint Dec. ¶ 34. Their Private Information was all allegedly compromised by Defendants in the same manner. *Id.* Under the terms of the Settlement, Plaintiffs and Settlement Class Members will all be eligible for the same Cash Payments and Credit Monitoring, and will all benefit from business practice changes. *Id.*

Further, proposed Class Counsel, who the Court already appointed Interim Co-Lead Class Counsel, have decades of combined experience as vigorous class action litigators, including extensive data breach experience, and are well suited to advocate for the Settlement Class. *Id.* ¶ 36. Moreover, they have put their collective experience to use in negotiating a valuable, early-stage Settlement that guarantees immediate relief to Settlement Class. *Id.* ¶ 38.

**Predominance and Superiority.** Fed. R. Civ. P. 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This two-fold inquiry is met here.

First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this Action, key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information of Plaintiffs and the Settlement Class, and whether they breached that duty. The common questions that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (predominance satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used

reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (predominance satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

Second, the resolution of so many claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating over 500,000 individual data breach cases arising out of the same Data Incident.

Accordingly, the Settlement Class should be certified pursuant to Rule 23(a) and (b)(3).

## B.    The Settlement Terms are Fair, Adequate, and Reasonable.

On preliminary approval, and prior to approving notice to the proposed settlement class, the Court must find it will "likely" be able to grant final approval under Rule 23(e)(2), deciding whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Before the 2018 revisions to Rule 23(e), the Fifth Circuit developed its own factors to

determine whether a settlement was fair, adequate, and reasonable: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Stott v. Cap. Fin. Servs. Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. Nov. 8, 2005) (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often consider them together. *ODonnell*, 2019 WL 4224040, at *8 (citing *Hays v. Eaton Grp. Att'ys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *Hays*, 2019 WL 427331, at *9. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, the Settlement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors.

### 1. The Settlement Class Is Adequately Represented. (Fed. R. Civ. P. 23(e)(2)(A)).

As discussed *supra*, to satisfy adequacy of representation, plaintiffs must establish: (1) there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests

of absent class members. *Feder*, 429 F.3d at 130. Here, the Plaintiffs, like all Settlement Class members, have been subjected to the same Data Incident, and thus have common interests with the Class. Moreover, they have ably represented the Settlement Class, maintaining contact with counsel, reviewing and approving pleadings, assisting in the investigation of the case, remaining available for consultation throughout the mediation, reviewing and approving the Settlement documents, and for answering counsel's many questions. Joint Decl. ¶ 35.

Class Counsel also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive data breach litigation experience, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. Joint Decl.¶ 39. As such, Fed. R. Civ. P. 23(e)(2)(A) supports Preliminary Approval.

### 2. The Settlement is the product of good-faith arm's-length negotiations, and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh*, 2018 WL 7283639, at *12. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation omitted). Here, there is no evidence of fraud or collusion. After a full exchange of information related to liability and damages, the Parties attended a full day mediation where, with the assistance of respected neutral John DeGroote, the Parties agreed to settle the Action. *Id.* ¶ 19. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *Id.* ¶ 20. Moreover, the proposed Settlement also does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and in favor of approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed.

R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

> ### 3. The Settlement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Incident.

<u>First</u>, all Settlement Class Members may claim up to three years of three-bureau Credit Monitoring that will provide the following benefits: three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. Agr. ¶ 69(c). <u>Second</u>, they may Claim Cash Payment A (up to $5,000.00 for documented losses, subject to *pro rata* adjustment) or Cash Payment B ($100.00 flat cash payment, subject to *pro rata* adjustment). *Id.* ¶¶ 69(a)-(b), 70. <u>Finally</u>, Settlement Class Members will receive the benefits of the Business Practice Changes enacted by Defendants. *Id.* ¶ 71. These benefits are consistent with, and in fact exceed, agreement terms approved by Courts in other, similar data breach cases. *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Chacon v. Nebraska Med.*, No. 8:21-cv-00070 (D. Neb. Sept. 15,

2021) (data breach settlement providing up to $300 in ordinary expense reimbursements including to 6 hours of lost time at $20 per hour; up to $3,000 in extraordinary expense reimbursements; one-year of automatic credit monitoring; data security enhancements); *Chatelain v. C, L & W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (Tex. 42d Dist. Ct. Taylor Cnty. Nov. 5, 2020) (data breach settlement providing 12-months of credit monitoring services and no expense reimbursements). Upon Final Approval, the relief will be distributed to all Settlement Class Members.

Moreover, as the Application for Attorneys' Fees, Costs, and Service Awards will detail, the 33.33% of the common Settlement Fund is regularly granted in the Fifth Circuit. *See, e.g., Diaz v. World Accept. Corp.*, 1:19-CV-957-RP, 2021 WL 2709677, at *2 (W.D. Tex. Jan. 7, 2021); *Miller v. Global Geophysical Servs., Inc.*, No. 14-cv-0708, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016).

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiffs strongly believe in the merits, they also understand that Defendants assert a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiffs would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiffs dispute the Defendants' defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class members gain significant benefits without risking getting no relief at all if the case continues.

### 4. *The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).*

Here, the proposed Settlement does not improperly discriminate between segments of the

Settlement Class. All Settlement Class Members are eligible to make a Claim for a Cash Payment and Credit Monitoring, subject to proper claim completion and validation. And, while Plaintiffs will each be seeking a $3,000 Service Award, this award is *less than* the amount any given Settlement Class member can claim from Cash Payment A and is justified by Plaintiff's work. Accordingly, this factor also weighs in favor of Preliminary Approval.

### 5. The "Reed" Factors considered by Fifth Circuit Courts also weigh in favor of preliminary approval.

The remaining *Reed* factors all support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

The sixth factor (opinions of class counsel, class representatives, and absent class members), is most appropriately examined after Notice to the Settlement Class and absent Settlement Class members have a chance to respond, but there is no reason to believe there will be antagonism to the Settlement. Plaintiffs approve its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. The Settlement's valuable relief to Settlement Class Members, makes it fair, reasonable, adequate, and worthy of Preliminary Approval. Joint Decl. ¶ 37.

Thus, these additional *Reed* factors weigh in favor of approving the proposed Settlement and the Court should grant Preliminary Approval.

### C.    The Proposed Settlement Administrator will Provide Adequate Notice.

Fed. R. Civ. P. 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agr., Exs. 1–2. Here, the Settlement provides for direct and individual Postcard Notice to each Settlement Class member. Agr. ¶ 79. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* ¶ 85. The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* ¶ 63. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id.* ¶ 76(e). A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *Id.* ¶ 76(c).

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agr., Exs. 1–2.

The direct Postcard Notice here is the gold standard, and is consistent with Notice programs approved in this Circuit. *See, e.g.*, *Stott*, 277 F.R.D. at 342 (approving notice sent to all class members by first class mail); *Billittri v. Secs. Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). Tus, the Notice process should be approved by this Court.

## VI.      PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiffs as Class Representatives; (7) appoint as Class Counsel Jeff Ostrow, Gary Klinger, Andrew Shamis, and Bruce Steckler; (8) appoint Epiq as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendants and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing. A proposed Preliminary Approval Order is attached hereto as *Exhibit C*, which contains a proposed schedule of events leading up to the Final Approval Hearing. That hearing should preferably be set for the week of June 23, 2025, or as soon thereafter.

Dated: December 30, 2024                           Respectfully submitted,


*/s/ Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

Gary Klinger
**MILBERG COLEMAN**
**BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe St., Ste. 2100
Chicago, IL 60606
Tele: 866.252.0878
gklinger@milberg.com

Andrew Shamis
**SHAMIS & GENTILE**
14 N.E. 1st Ave., Ste. 705
Miami, FL 33132
Tel: 305.479.2299
ashamis@shamisgentile.com

Bruce W. Steckler
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Tele: 972.387.4040
Fax: 972. 387.4041
bruce@swclaw.com

## CERTIFICATE OF CONFERRAL

I hereby certify Plaintiffs and Defendants conferred regarding the relief requested, and this motion is unopposed.

*/s/ Jeff Ostrow*
Jeff Ostrow

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on December 30, 2024 via CM/ECF, in accordance with Local Rule CV-5 and Fed. R. Civ. P. 5(b).

*/s/ Jeff Ostrow*
Jeff Ostrow