# EXHIBIT A

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| MONIQUE BRINK, on behalf of herself and all others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> SYSINFORMATION HEALTHCARE SERVICES, LLC d/b/a EQUALIZERCM and 1ST CREDENTIALING SERVICES, <br><br>     Defendant. | Lead Case No. 1:24-CV-00501 <br><br><br> Consolidated Cases:     1:24-CV-006283 <br>                                1:24-CV-000819 <br><br><br> Judge James R. Nowlin |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement" or "Agreement"),[1] dated as of December 29, 2024, is entered into between Plaintiffs, on behalf of themselves and the Settlement Class, on the one hand, and Defendants, SysInformation Healthcare Services, LLC d/b/a EqualizeRCM and 1st Credentialing Services (collectively "Defendants" or "SysInformation") on the other hand. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I.    Background

1.     SysInformation is a third-party healthcare solutions company that offers provider credentialing services to its healthcare clients, including, but not limited to, payor enrollment, multi-state contracting, delegated credentialing, sanction monitoring, project work for payor enrollment, and much more.

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

2.      In the course of operating its business, SysInformation collects, maintains, and stores Private Information pertaining to certain of its healthcare clients, including, but not limited to, name, government identification number, date of birth, Driver's license number, employer identification number, electronic signature, financial account information, health insurance information, medical history/treatment information, login information, mother's maiden name, passport information, Social Security number, and tax identification number.

3.      In or about June 2023, SysInformation discovered suspicious activity related to certain computer systems which resulted in a network outage. The investigation determined there was unauthorized access and/or acquisition of certain files and folders within the SysInformation network between June 3, 2023, and June 18, 2023. Following an extensive review, SysInformation determined that information which may have been involved potentially included data related to certain services it provides to clients as well as current and former employees of SysInformation.

4.      In or about April 17, 2024, Defendants began notifying by letter individuals who may have had their Personal Information impacted in the Data Incident.

5.      As a result of the Data Incident, commencing on May 13, 2024, Defendants were named in first of three putative Related Actions that have overlapping claims, seek to represent the same putative class members, and arise out of the same Data Security Incident.

6.      Plaintiffs in the Related Actions conferred, agreed to, and moved the Court on August 23, 2024, to consolidate the Related Actions and to appoint Class Counsel as Interim Co-Lead Class Counsel.

7.      Thereafter, on September 3, 2024, the Court consolidated the actions into this Action and appointed Jeff Ostrow, Gary Klinger, and Andrew Shamis as Interim Co-Lead Class Counsel for the putative class.

8.    Thereafter, Class Counsel prepared written discovery, including interrogatories and a request for production. It also drafted a comprehensive Rule 30(b)(6) notice of deposition topics.

9.    Class Counsel also consulted with multiple data experts to understand how the breach occurred, the type of information involved, and whether the information was published on the dark web.

10.    At or around the same time, the Parties began discussing settlement and scheduled a mediation with attorney John DeGroote, an experienced data breach class action mediator, on October 24, 2024.

11.    In advance of the mediation, Plaintiffs propounded informal discovery requests to learn as much as possible in advance of mediation. Through the provision of informal discovery, Plaintiffs were able to evaluate the merits of Defendants' position. The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues.

12.    On October 18, 2024, Plaintiffs filed a Consolidated Class Action Complaint against Defendants.

13.    The Parties mediated on October 24, 2024, and after a full day of negotiations, agreed upon the material terms of a settlement.

14.    The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendants entered into this Agreement to resolve all controversies and disputes arising out of or relating to the Data Incident and the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to their business operations associated with further litigation. Defendants do not in any way acknowledge, admit to, or concede any of the

allegations made in the Complaint (and similarly do not concede any of the allegations in the other complaints in the Related Actions), and disclaim and deny any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in nay court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, Defendants, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficient of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.   <u>Definitions</u>

15.   "Action" means the consolidated lawsuit entitled: *Monique Brink, Faye McMillen, and Grant Johnson v. SysInformation Healthcare Services, LLC d/b/a EqualizeRCM and 1st Credentialing*, Lead Case No. 1:24-CV-00501, filed in the United States District Court for the Western District of Texas, Houston Division.

16.   "Application for Attorneys' Fees, Costs, and Service Awards" means the application made with the Motion for Final Approval seeking Service Awards for Class Representatives and Class Counsel's attorneys' fees and reimbursement for costs.

17.   "Cash Payment" means compensation paid to Settlement Class Members who

elected either Cash Payment A or Cash Payment B.

18.     "Cash Payment A" means the Settlement Class Member Benefit that Settlement Class members, who incurred documented losses, may elect under Section V herein.

19.     "Cash Payment B" means the Settlement Class Member Benefit consisting of a $100.00 cash payment (subject to pro rata increase or decrease) that Settlement Class Members may elect under Section V herein.

20.     "Claim" means the submission of a Claim Form by a Claimant.

21.     "Claim Form" means the proof of claim, substantially in the form attached hereto as ***Exhibit 3***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

22.     "Claim Form Deadline" shall be 15 days before the initial scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Cash Payment.

23.     "Claimant" means a Settlement Class member who submits a Claim Form.

24.     "Class Counsel" means: Gary Klinger, Jeff Ostrow, Andrew Shamis, and Bruce Steckler.

25.     "Class List" means a list of all individuals in the Settlement Class. Defendants shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. Class List shall include the Settlement Class' names and postal address.

26.     "Class Representatives" means Plaintiffs.

27.     "Complaint" means the Consolidated Class Action Complaint filed in the Action on October 1, 2024.

28.     "Court" means the United States District Court for the Western District of Texas

(Austin Division) and the Judge(s) assigned to the Action.

29.    "Credit Monitoring" means up to three years of credit monitoring Settlement Class Members may elect under Section V herein.

30.    "Data Incident" means the incident that was discovered in June 2023, in which an unauthorized third party potentially gained access to Settlement Class Members' Private Information between June 3, 2023, and June 18, 2023.

31.    "Defendants" means SysInformation Healthcare Services, LLC d/b/a EqulizerRCM and 1st Credentialing.

32.    "Defendants' Counsel" means Amanda Harvey of Mullen Coughlin LLC.

33.    "Effective Date" means the date when the Settlement Agreement becomes Final, which is 30 days after the Court's granting of the Final Approval Order, assuming no appeals have been filed. If an appeal is filed, the Effective Date will become 30 days from when the appeal is finalized and a final judgment is entered in this case shall be conditioned on the occurrence of all the following events: (a) the Court has entered an Order of Preliminary Approval; (b) Defendants have not exercised its option to terminate the Settlement; (c) the Court has entered the Judgment granting Final Approval to the Settlement as set forth herein; and (d) the Judgment has become Final.

34.    "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

35.    "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

36.    "Final Approval Hearing" means the hearing held before the Court during which

the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs and Service Award.

37.    "Final Approval Order" means the final order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and shall be substantially in the form attached as an exhibit to the Motion for Final Approval. Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel.

38.    "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as *Exhibit 2*, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

39.    "Motion for Final Approval" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

40.    "Motion for Preliminary Approval" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

41.    "Notice" means the Postcard Notice, Long Form Notice, Settlement Website and settlement telephone line that Plaintiffs and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

42.    "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Postcard Notice, Long Form Notice, Settlement Website and Settlement telephone line.

43.    "Notice of Deficiency" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

44.    "Objection Period" means the period that begins the day after the earliest day on

which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

45.    "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

46.    "Party" means each of the Plaintiffs and the Defendants, and "Parties" means Plaintiffs and Defendants collectively.

47.    "Plaintiffs" means Monique Brink, Faye McMillen, and Grant Johnson.

48.    "Postcard Notice" means the postcard notice of the Settlement, substantially in the form attached hereto as ***Exhibit 1***, that the Settlement Administrator shall disseminate to the Settlement Class by mail.

49.    "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached to the Motion for Preliminary Approval.

50.    "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

51.    "Private Information" means Settlement Class members' information that may have been accessible in the Data Security Incident, which may include: names, Social Security numbers, driver's license/state identification numbers, and other sensitive information.

52.    "Related Actions" means the following two actions filed in the Western District of Texas that were consolidated into the Action on September 3, 2024: *Grant Johnson vs. SysInformation*; Case No. 1:24-cv-00623 and *Faye McMillen vs. SysInformation*; Case No. 1:24-cv-00819.

53.    "Releases" means the releases and waiver set forth in Section XIII of this Agreement.

54.    "Released Claims" means the claims described in Section XIII of this Agreement. "Released Parties" means Defendants, and their present and former parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, clients, customers, data owners, associated third parties, predecessors, successors and assigns, and any other person acting on Defendants' behalf, in their capacity as such. It is understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

55.    "Releasing Parties" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him or her, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest,

9

assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

56.    "Service Awards" means the payment the Court may award the Plaintiffs for serving as Class Representatives.

57.    "Settlement Administrator" means Epiq Class Action Claims & Solutions, Inc or "Epiq".

58.    "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration.

59.    "Settlement Class" means all persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendants that their Private Information was potentially accessible as a result of the Data Incident. Excluded from the Settlement Class are (a) all persons who are governing board members of the Defendants; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff.

60.    "Settlement Class Member" means any member of the Settlement Class who has not opted-out of the Settlement.

61.    "Settlement Class Member Benefit" means the Cash Payment and, if applicable, Credit Monitoring, elected by Settlement Class Members.

62.    "Settlement Fund" means the non-reversionary $2,800,000 cash fund that Defendants agreed to pay or cause to be paid under the terms of the Settlement.

63.    "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary

Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

64.    "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.    <u>Settlement Fund</u>

65.    Defendants agree to make a payment of, and deposit that payment into, the Settlement Fund as follows:  (a) Within 20 days of the Court granting Preliminary Approval of the Settlement, Defendants shall pay all costs associated with notifying the Settlement Class in an amount estimated by the Settlement Administrator (said amount being part of and not in addition to the Settlement Fund); (b) within 30 days of the Effective Date, Defendants shall pay into the Escrow Account the remaining portion of the Settlement Fund; and (c) within forty-t42) days of the Effective Date, the Settlement Administrator shall pay to Class Counsel any attorneys' fees,

costs, expenses, and service award pursuant. The Settlement Administrator shall use this balance to pay for Costs of Settlement Administration. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Defendants' liability shall not exceed $2,800,000.

66.     The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs.

67.     The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg.§ 1.468B-l at all times since creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed on Defendants, Defendants' Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

IV.     **Certification of the Settlement Class**

68.     Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes only. Defendants agree solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall

proceed as a settlement class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendants shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement or any negotiations leading to this Agreement in support of any subsequent motion for class certification of any class in the Action.

## V.    <u>Settlement Consideration</u>

69.    When submitting a Claim for a Cash Payment, Settlement Class Members must choose either Cash Payment A or Cash Payment B. Additionally, Settlement Class Members may elect to receive Credit Monitoring. If a Settlement Class Member does not submit a Valid Claim or opt-out, the Settlement Class Member will release his or her claims against Defendants without receiving a Settlement Class Member Benefit.

### a.    **Cash Payment A –Documented Losses**

Settlement Class Members may submit a claim for a Cash Payment under this section for up to $5,000.00 per Settlement Cass Member upon presentment of documented losses related to the Data Security Incident. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendants or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member

fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will not receive a Cash Payment.

        **b.**       **Cash Payment B – Flat Cash Payment**

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the amount of $100.00.

        **c.**       **Credit Monitoring**

In addition to electing a Cash Payment, Settlement Class Members may elect up to three years of three-bureau Credit Monitoring that will provide the following benefits: three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services.

70.    *Pro Rata* **Adjustments on Cash Payments** - Settlement Class Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payment A, and finally for Cash Payment B. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring on its own exhausts the amount of the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund.

71.    **Business Practice Changes** - Plaintiffs have received assurances that Defendants have undertaken reasonable steps to further secure their systems and environments. Defendants

have provided confidential discovery regarding the facts and circumstances of the Data Incident and Defendants' response thereto, and the changes and improvements that have been made to protect class members' Private Information. SysInformation will provide a sworn declaration attesting to the amount of money spent on remediation efforts and security enhancements, which has a cost of at least $250,000.00.

## VI.    <u>Settlement Approval</u>

72.    Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval, after review by Defendants. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and Defendants.

73.    The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim process; (5) approve the procedures for individuals in the Settlement Class to opt-out of or object to the Settlement; (6) stay the Action and Related Actions pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendants' Counsel.

## VII.    <u>Settlement Administrator</u>

74.    The Parties agree that, subject to Court approval, Epiq shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the

Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

75.     The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments to Settlement Class Members who submit Valid Claims.

76.     The Settlement Administrator's duties include to:

a.     Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice, sending Long Form Notices and paper Claim Forms on request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

b.     Establish and maintain the Settlement Fund in the Escrow Account approved by the Parties;

c.     Establish and maintain a post office box to receive opt-out requests from the Settlement Class and objections from Settlement Class Members, and Claim Forms;

d.     Establish and maintain the Settlement Website to provide important information about the Settlement and electronic submission of Claim Forms;

e.     Establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

f.     Respond to any mailed Settlement Class member inquiries;

g.      Process all opt-out requests from the Settlement Class;

h.      Provide weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.      In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

j.      Distribute, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

k.      Send Settlement Class Members who elect Credit Monitoring emails instructing how to activate their Credit Monitoring service;

l.      Pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund;

m.      Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and

n.      Any other Settlement Administration function at the instruction of Class Counsel and Defendants' Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

77.     The Notice Program and Notices will be reviewed and approved by the Settlement Administrator, but may be revised as agreed upon by the Parties prior to submission to the Court for approval. Immaterial revisions to the Notices may also be made prior to dissemination of Notice.

## VIII.    **Notice to the Settlement Class**

78.     Defendants will coordinate to make available to the Settlement Administrator the Class List no later than 10 days after entry of the Preliminary Approval Order.

79.     Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Postcard Notice shall be disseminated via U.S. Mail to the Settlement Class's mailing addresses, to the extent known. Notice shall also be published on the Settlement Website.

80.     The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendants' Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date

or time for the Final Approval Hearing changes.

81.     The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

82.     The Long Form Notice also shall include a procedure for individuals in the Settlement Class to opt-out of the Settlement; and the Postcard Notice shall direct individuals in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim.

83.     The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendants' Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted

when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

84.     For an objection to be considered by the Court, the objection must also set forth:

a.      the objector's full name, mailing address, telephone number, and email address (if any);

b.      all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.      the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.      the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

e.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

f.      any and all agreements that relate to the objection or the process of

objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

   g. the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

   h. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

   i. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

   j. the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel.

   85. The Settlement Administrator shall perform reasonable address traces for those Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 45 days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces.

   86. The Notice Program shall be completed no later than 45 days before the original date set for the Final Approval Hearing.

## IX. Claim Form Process and Disbursement of Cash Payments

   87. The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

88.     Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

89.     The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

90.     The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

91.     The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and

22

Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

92.     Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendants and Class Counsel otherwise agree.

93.     Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

        a.     Failure to fully complete and/or sign the Claim Form;

        b.     Illegible Claim Form;

c.    The Claim Form is fraudulent;

d.    The Claim Form is duplicative of another Claim Form;

e.    The Claimant is not a Settlement Class Member;

f.    The Claimant submitted a timely and valid request to opt-out of the Settlement Class.

g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.    The Claim Form otherwise does not comply with the requirements of this Settlement.

94.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.    The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

b.    A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this paragraph.

c.    If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendants' Counsel shall be provided with copies of all such notifications to Claimants.

d.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

95.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all

notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendants' Counsel. Additionally, Class Counsel and Defendants' Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

96.    No person or entity shall have any claim against Defendants, Defendants' Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

97.    The Settlement Administrator shall distribute the Settlement Class Member Benefits no later than 75 days after the Effective Date.

98.    Cash Payments to Settlement Class Members will be made electronically or by paper check. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 180 days to negotiate the check.

99.    The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that elected Credit Monitoring with information on how to enroll in the program, including the activation code.

## X.    Final Approval Order and Final Judgment

100.    Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel)

who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

101.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees, Costs, and Service Awards. Such proposed Final Approval Order shall, among other things:

        a.     Determine that the Settlement is fair, adequate and reasonable;

        b.     Finally certify the Settlement Class for settlement purposes only;

        c.     Determine that the Notice Program satisfies Due Process requirements;

        d.     Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

        e.     Release Defendants and the Released Parties from the Released Claims; and

        f.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.    Service Awards, Attorneys' Fees and Costs

102.    **Service Awards** – In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class

Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $3,000.00 each. If approved, the Service Awards shall be paid by the Effective Date by the Settlement Administrator out of the Settlement Fund. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to benefits from the Settlement Fund.

103.    **Attorneys' Fees and Costs** - Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Effective Date by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel.

104.    This Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement.

## XII.    Disposition of Residual Funds

105.    The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining from uncashed checks in the Settlement Fund within 45 days following the 180-day check negotiation period, all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court.

## XIII.    Releases

106.    As of the Effective Date, the Releasing Parties shall automatically be deemed to

have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Incident; (b) the Action; or (c) any of the alleged violations of laws or regulations cited in the Complaint.

107.    Plaintiffs and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

108.    Individuals in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Deadline do not release their individual claims and will not obtain any benefits under the Settlement.

109.    With respect to the Released Claims, Plaintiffs and Settlement Class Members understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and Defendants with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the

Settlement shall have, waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

110.    Plaintiffs or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

111.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court

order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

## XIV.   <u>Termination of Settlement</u>

112.    This Agreement shall be subject to and is conditioned on the occurrence of all of the following events:

        a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

        b.    The Court has entered the Preliminary Approval Order;

        c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

        d.    The Effective Date has occurred.

113.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement may be cancelled and terminated.

114.    Defendants shall have the option to terminate this Agreement if more than 3% of the Settlement Class opt-out of the Settlement. Defendants shall notify Class Counsel and the Court of its or their intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

115.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, the terms and provisions of this Agreement shall have no further

force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

116.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendants. However, Defendants shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by or on behalf of Defendants. After payment of any Settlement Administration Costs that have been incurred and are due to be paid from the Settlement Fund, the Settlement Administrator shall return the balance of the Settlement Fund to Defendants (allocated according to the percentage share paid by or on behalf of each Defendant, as set forth in Section III) within 21 days of termination.

**XV.    Effect of Termination**

117.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendants', and Defendants' Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

118.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this

Agreement had not been negotiated, made, or filed with the Court.

## XVI.   No Admission of Liability

119.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendants have denied and continue to deny each of the claims and contentions alleged in the Complaint. Defendants specifically deny that a class could or should be certified in the Action for litigation purposes. Defendants does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

120.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted informal discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

121.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind

whatsoever.

122.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

123.    In addition to any other defenses Defendants may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII.  **Miscellaneous Provisions**

124.    <u>Gender and Plurals</u>. As used in this Agreement, the masculine or feminine gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

125.    <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

126.    <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

127.    <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a

dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

128. <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind have been made by any Party, except as provided for herein.

129. <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

130. <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Texas, without regard to the principles thereof regarding choice of law.

131. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

132. <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the

Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

133.    <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

If to Plaintiffs or Class Counsel:

Gary Klinger
Milberg Coleman
Bryson Phillips Grossman PLLC
227 W. Monroe St., Ste. 2100
Chicago, IL 60606
gklinger@milberg.com

Jeff Ostrow
Kopelowitz Ostrow P.A.
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

Andrew Shamis
Shamis & Gentile
14 N.E. 1st Ave., Ste. 705
Miami, FL 33132
ashamis@shamisgentile.com

Bruce W. Steckler
Steckler Wayne & Love PLLC
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@swclaw.com

If to Defendants or Defendants' Counsel:

Amanda Harvey
Mullen Coughlin LLC
1452 Hughes Rd., Ste. 200
Grapevine, TX 76051
aharvey@mullen.law

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

134.    <u>Modification and Amendment</u>. This Agreement may not be amended or modified,

except by a written instrument signed by Class Counsel and Defendants' Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

135.    No Waiver. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

136.    Authority. Class Counsel (for Plaintiffs and the Settlement Class), and Defendants' Counsel (for Defendants), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and Defendants to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

137.    Agreement Mutually Prepared. Neither Plaintiffs nor Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

138.    Independent Investigation and Decision to Settle. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their counsel, consultants, and/or experts used to make certain

determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

139.  <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*Signature Page to Follow*

**PLAINTIFFS**

_Monique Brink (Dec 6, 2024 12:38 CST)_
MONIQUE BRINK
*Plaintiff*

_Faye McMillen (Dec 7, 2024 00:50 CST)_
FAYE MCMILLEN
*Plaintiff*

_Grant Johnson (Dec 6, 2024 13:35 EST)_
GRANT JOHNSON
*Plaintiff*

**CLASS COUNSEL**

_Gary M. Klinger_
Gary M. Klinger (Dec 6, 2024 12:34 CST)
**GARY KLINGER**
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC

_Jeffrey Ostrow_
Jeffrey Ostrow (Dec 6, 2024 14:54 EST)
**JEFF OSTROW**
KOPELOWITZ OSTROW P.A.

_andrew shamis_
**ANDREW SHAMIS**
SHAMIS & GENTILE P.A.

_Bruce Steckler (Dec 6, 2024 13:03 CST)_
**BRUCE STECKLER**
STECKLER WAYNE & LOVE PLLC

**SYSINFORMATION**

By: _Gregory T. Skalla_
Its _CFO_

**SYSINFORMATION'S COUNSEL**

AMANDA HARVEY
MULLEN COUGHLIN LLC

38

**PLAINTIFFS**

Monique Brink (Dec 6, 2024 12:38 CST)

MONIQUE BRINK
*Plaintiff*

Faye McMillen (Dec 7, 2024 09:50 CST)

FAYE MCMILLEN
*Plaintiff*

Grant Johnson (Dec 6, 2024 13:35 EST)

GRANT JOHNSON
*Plaintiff*

**CLASS COUNSEL**

*Gary M. Klinger*
Gary M. Klinger (Dec 6, 2024 12:34 CST)

**GARY KLINGER**
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC

*Jeffrey Ostrow*
Jeffrey Ostrow (Dec 6, 2024 14:54 CST)

**JEFF OSTROW**
KOPELOWITZ OSTROW P.A.

*andrew shamis*

**ANDREW SHAMIS**
SHAMIS & GENTILE P.A.

Bruce Steckler (Dec 6, 2024 13:03 CST)

**BRUCE STECKLER**
STECKLER WAYNE & LOVE PLLC

**SYSINFORMATION**

By: _____
Its _____

**SYSINFORMATION'S COUNSEL**

AMANDA HARVEY
MULLEN COUGHLIN LLC

38