# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MONIQUE BRINK, et al, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYSINFORMATION HEALTHCARE SERVICES, LLC d/b/a EQUALIZERCM and 1st CREDENTIALING SERVICES,<br><br>        Defendants. | Lead Case No. 1:24-CV-00501<br><br><br>Consolidated Cases: 1:24-CV-006283<br>1:24-CV-000819<br><br><br>Judge James R. Nowlin |

**JOINT DECLARATION OF CLASS COUNSEL JEFF OSTROW, GARY KLINGER, ANDREW SHAMIS AND BRUCE STECKLER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

We, Jeff Ostrow, Gary Klinger, Andrew Shamis, and Bruce Steckler, declare as follows:

1.      We are Class Counsel[1] for the Settlement Class in the above-captioned case. This Declaration supports Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Application for Attorneys' Fees, Costs, and Service Awards to Plaintiffs, and Memorandum in Support.

2.      Unless otherwise noted, we have personal knowledge of the facts in this declaration and could testify to them if called on to do so.

3.      SysInformation is a third-party healthcare solutions company that offers provider credentialing services to its healthcare clients, including, but not limited to, payor enrollment,

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement.

multi-state contracting, delegated credentialing, sanction monitoring, project work for payor enrollment, and much more.

4.      In the course of operating its business, SysInformation collects, maintains, and stores Private Information pertaining to certain of its healthcare clients, including, but not limited to, name, government identification number, date of birth, Driver's license number, employer identification number, electronic signature, financial account information, health insurance information, medical history/treatment information, login information, mother's maiden name, passport information, Social Security number, and tax identification number.

5.      In or about June 2023, SysInformation discovered suspicious activity related to certain computer systems which resulted in a network outage. The investigation determined there was unauthorized access and/or acquisition of certain files and folders within the SysInformation network between June 3, 2023, and June 18, 2023. Following an extensive review, SysInformation determined that information which may have been involved potentially included data related to certain services it provides to clients as well as current and former employees of SysInformation

6.      In or about April 17, 2024, Defendants began notifying by letter individuals who may have had their Personal Information impacted in the Data Incident.

7.      As a result of the Data Security Incident, commencing in May 2024, Defendants were named in three Related Actions in connection with their alleged failure to safeguard the Private Information they maintained on behalf of the Settlement Class. Defendants deny all liability and wrongdoing.

8.      After commencing litigation, Class Counsel engaged in informal document discovery to understand how the breach occurred, the type of information involved, and whether the information was published on the Dark Web.

9.      The Parties began discussing settlement and scheduled mediation with Mr. John DeGroote, an experienced data breach mediator, on October 24, 2024.

10.      Before mediation, Plaintiffs propounded informal discovery requests to be prepared to negotiate. The Parties also exchanged mediation briefs outlining their positions as to liability, damages, and settlement-related issues.

11.      After a full exchange of information related to liability and damages, the Parties participated in an a full-day mediation. The Parties successfully agreed to the material settlement terms through their significant arms-length negotiations.

12.      Over several weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to the Settlement Administrator. The Settlement Agreement was signed on December 6, 2024.

13.      The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms.

14.      The agreed upon Releases are narrowly tailored to the claims made in the Action.

15.      The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake.

16.      Although Plaintiffs believe the claims asserted in this Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain.

17.      The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.

18.     Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the risk of losing at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgment, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt.

19.     Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments and Credit/Data Monitoring for all Settlement Class members.

20.     The Settlement calls for the creation of a non-reversionary all cash $2,800,000.00 Settlement Fund to be established by Defendant to settle this Action and will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Service Awards to Class Representatives; and (4) any attorneys' fees and costs awarded to Class Counsel.

21.     All Settlement Class Members may select three years of three-bureau Credit Monitoring that will provide the following benefits: three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. Additionally, they may Claim Cash Payment A (up to $5,000.00 for documented losses, subject to *pro rata* adjustment) or Cash Payment B ($100.00 flat cash payment, subject to *pro rata* adjustment).

22.     As reflected in the Motion for Final Approval, these Settlement Class Member Benefits are consistent with, and in fact exceed, other approved settlements.

23.     Defendant also has agreed to valuable injunctive relief in the form of additional security measures that they commit to implement on or before Final Approval.

24.     The Settlement guarantees Settlement Class members real relief for harms and protections from potential future fall-out from the Data Security Incident.

25.     The Settlement does not improperly discriminate between any segments of the Settlement Class

26.     Class Counsel worked closely with the Settlement Administrator.

27.     The Notice Program was implemented in compliance with the Agreement and the Preliminary Approval Order and the Claims process is ongoing. The proposed Notice Program was designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. Direct and individual notice via first-class mail to each Settlement Class member occurred.

28.     The Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. The Claim submission process was structured to give all Settlement Class members adequate time to review the Settlement terms, submit their Claims, and decide whether to opt-out of or object to the Settlement.

29.     Claim Forms (submitted mailed or online) are due to the Settlement Administrator by Claim Form Deadline, which is August 24, 2025. The Claim Form is in plain language for easy completion and the overall process is straightforward.

30.     Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator. Those Settlement Class Members who elect Credit/Data Monitoring will receive emails with account activation codes.

31.     Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. This Action has been thoroughly investigated by counsel experienced in data breach

litigation. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement.

32.     It is the opinion of Class Counsel, based on the experience detailed below, that the Settlement is a fair, reasonable, and adequate resolution of Plaintiffs' and Settlement Class members' claims.

33.     Plaintiffs were appointed as the Class Representatives in the Preliminary Approval Order. The Settlement calls for reasonable Service Awards for the Class Representatives of up to $3,000.00. The Service Awards are intended to compensate them for their efforts on the Settlement Class' behalf.

34.     The Class Representatives have ably represented the Settlement Class and have been instrumental in assisting Class Counsel throughout this proceeding. Plaintiffs initiated and remained in contact with Class Counsel; assisted in the investigation of the Action; considered and reviewed the pleadings in this case and the Agreement; supervised and monitored Class Counsel, remaining available for consultation throughout mediation; and provided background documents and followed the progress of this litigation to ensure the Settlement Class received the best recovery possible given the particular circumstances and risks of the Action. Plaintiffs are committed to continuing to assist Class Counsel through and following Final Approval.

35.     Settlement Class members are all potentially affected by the same Data Security Incident as the Class Representatives, and thus the Class Representatives have common interests with the Settlement Class.

36.     Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests.

37.     After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs as part of the total Settlement Class Member Benefits. Class Counsel seek a $933,333.333 attorneys' fees award (33.33% of the Settlement Fund) under the Fifth Circuit's percentage of the fund method and reimbursement of $13,856.58 for litigation costs. The Notices advised the Settlement Class of these intended requests and further information of how to object.

38.     Class Counsel are highly qualified and have a great deal of experience litigating complex consumer class actions, including in the data privacy context. *See* Class Counsel resumes attached hereto as ***Exhibits 1 – 4***. This experience proved beneficial to Plaintiffs and the Settlement Class during Settlement negotiations.

39.     In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. Defendant is represented by extremely capable counsel who are worthy, highly competent adversaries.

40.     Class Counsel have devoted substantial time and resources to prosecuting this Action and will continue to do so. Before commencing litigation, Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Security Incident.

41.     Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations.

42.    Class Counsel have not been paid for their extensive efforts in securing the Settlement benefits for the Settlement Class and has not been reimbursed for litigation costs incurred.

43.    Class Counsel took this case on a contingency basis unaware if they were going to get paid for their attorneys' fees and costs advanced. Class Counsel assumed the risk of this engagement and worked diligently and efficiently to obtain a substantial result.

44.    The retention agreements with the Plaintiffs in this Action were contingent fee agreements. No payment of attorneys' fees would occur in this case but for an attorneys' fee award in an individual or class settlement. Class Counsel took on this case with no guarantee they would receive any compensation for their work, which occupied significant resources at Class Counsel firms even before this case was filed. There was a risk of nonpayment or underpayment for Class Counsel's time, with Class Counsel foregoing the opportunity to work on other cases.

45.    Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested fee. This practice encourages attorneys to assume this risk and allows plaintiffs who would otherwise not be able to hire an attorney to obtain competent counsel.

46.    Considering Defendant has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class, and makes litigating data breach cases less desirable.

47.    Prosecuting and settling these claims demanded considerable time and labor, making this attorneys' fee request reasonable. The organization of Class Counsel ensured the work

was coordinated to maximize efficiency and minimize duplication of effort. Substantial time and resources were also dedicated to working with experts, exchanging informal discovery, and preparing for and attending a successful mediation. Significant time was then devoted to negotiating and drafting that Agreement, the Preliminary Approval process, and to all actions required thereafter pursuant to the Preliminary Approval Order. Class Counsel has spent substantial time leading up to the filing of this Motion for Final Approval, addressing the Notice Program, Claims process, and preparing the Motion for Final Approval. Time will also be spent preparing for and attending the Final Approval Hearing. Finally, Class Counsel will devote substantial time to Settlement administration, should Final Approval be granted, to ensure Valid Claims are paid and the Settlement if fully implemented.

48.    Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement. Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested attorneys' fee.

49.    Currently, Class Counsel and other Plaintiffs' counsel have incurred a total of approximately 265.3 hours investigating and litigating this Action. They will spend additional time estimated to be at least 50 hours preparing for the Final Approval Hearing, responding to any objection(s), if filed, and then working with the Settlement Administrator to implement the Settlement. Should the Court require additional information concerning the lodestar, it will be provided for *in camera* inspection.

50.    Class Counsel request reimbursement for $13,856.58 for litigation costs, comprised of actual out-of-pocket costs that Class Counsel reasonably and necessarily incurred and paid in connection with the prosecution of the Action and the Settlement, including filing fees, *pro hac vice* applications, mediations fees, and travel.  A summary of the costs is below.

| Category | Amount |
|---|---|
| Filing Fees, Service Fees, and Pro Hac Vice Fees | $1,856.58 |
| Mediation Fees | $7,000.00 |
| Expert Fees | $5,000.00 |
| **Total** | **$13,856.58** |

I declare under penalty of perjury that the foregoing is true of my own personal knowledge.

Executed on July 21, 2025, in Fort Lauderdale, Florida.

> */s/ Jeff Ostrow*
> Jeff Ostrow
> **KOPELOWITZ OSTROW P.A.**

I declare under penalty of perjury that the foregoing is true of my own personal knowledge.

Executed on July 21, 2025, in Chicago, Illinois.

> */s/ Gary Klinger*
> Gary Klinger
> **MILBERG COLEMAN BRYSON**
> **PHILLIPS GROSSMAN, PLLC**

I declare under penalty of perjury that the foregoing is true of my own personal knowledge.

Executed on July 21, 2025, in Miami, Florida.

> /s/ *Andrew Shamis*
> Andrew Shamis
> **SHAMIS & GENTILE, P.A.**

I declare under penalty of perjury that the foregoing is true of my own personal knowledge.

Executed on July 21, 2025, in Dallas, Texas.

10

*/s/ Bruce Steckler*
Bruce Steckler
**STECKLER WAYNE & LOVE PLLC**